1   DAVID ELDER (SBN 171510)
    delder@housingrightscenter.org
2   JUDITH B. VASAN (SBN 278115)
3   JOEL MARRERO (SBN 275601)
    3255 Wilshire Boulevard, Suite 1150
4   Los Angeles, CA  90010
5   Tel.:  (213) 387-8400 x1116
    Fax:  (213) 381-8555
6

7   BRANCART & BRANCART
    Christopher Brancart (SBN 128475)
8   cbrancart@brancart.com
9   Elizabeth Brancart (SBN 122092)
10  ebrancart@brancart.com
    Post Office Box 686
11  Pescadero, CA 94060
12  Tel.: (650) 879-0141
    Fax: (650) 879-1103
13

14  ATTORNEYS FOR PLAINTIFF

15

16          IN THE UNITED STATES DISTRICT COURT

17    CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

18  SOUTHERN CALIFORNIA HOUSING      )   Case No.  CV13- 4921 DMG(CWx)
    RIGHTS CENTER, INC., d/b/a        )
19  HOUSING RIGHTS CENTER, INC., a    )
20  California nonprofit corporation, )   **COMPLAINT FOR DECLARATORY**
                                      )   **AND INJUNCTIVE RELIEF AND**
21          Plaintiff,                )   **DAMAGES FOR VIOLATIONS OF:**
                                      )   1. The Fair Housing, 42 U.S.C. §§
22                                    )      3601 *et seq.*;
23      vs.                           )   2. California Fair Employment and
                                      )      Housing Act, Cal. Gov't Code
24  PATRICK DE LA TORRE, individually,)      §§12955, *et seq.*;
25  MONICA REINOSO, individually, and )   3. Unfair Business Practices Act, Cal.
    MBVR, LLC, a California limited liability)  Bus. & Prof Code §§ 17200, *et*
26  company,                          )      *seq.*; and
                                      )   4. Negligence
27          Defendants.               )
28  _____ )

                           -1-
                        COMPLAINT

# I. INTRODUCTION

1.      This is an action for declaratory and injunctive relief and damages against Patrick de la Torre, Monica Reinoso, and MBVR LLC (collectively "Defendants") for discrimination based on race in connection with the rental of residential property.  This action arises under the Fair Housing Act of 1968, as amended, 42 U.S.C. §3601 *et seq.*, the California Fair Employment and Housing Act, Cal. Gov't Code 12955 *et seq.*, and related California state laws.

## II. JURISDICTION AND VENUE

2.      This Court's jurisdiction over this action's subject matter is predicated on 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States, specifically the federal Fair Housing Act, 42 U.S.C. §§ 3601-3619 ("FHA").  The state law claims form the same case and controversy as the federal law claims.  Thus, pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to hear and determine the Plaintiff's state law claims.

3.      The Defendants resides in this district, conducts business in this district, and all events or omissions giving rise to this complaint occurred in this district.  Thus, venue is proper in the Central District of California under 28 U.S.C. § 1391(b)(1) and (2).

4.      This Court has authority to grant declaratory and injunctive relief as well as actual and punitive damages pursuant to 42 U.S.C. § 3612(o)(3), and 42 U.S.C. § 3613(c)(1).  The Court also has the authority to award Plaintiff its reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 3613(c)(2).

## III.   PARTIES

5.      Plaintiff Southern California Housing Rights Center, Inc. ("HRC") is a private non-profit organization organized under the laws of the State of California with its principal place of business at 3255 Wilshire Boulevard, Suite 1150, Los Angeles, California 90010.

6.     Upon information and belief, at all times mentioned and relevant herein, Defendants own, manage, and operate the following residential rental apartment complexes ("subject properties") located at:

     a.    3825 Gibraltar Avenue, Los Angeles, California 90008

     b.    3916 Gibraltar Avenue, Los Angeles, California 90008

     c.    3838 Gibraltar Avenue, Los Angeles, California 90008

     d.    3885 Potomac Street, Los Angeles, California 90008

     e.    4535 Santo Thomas Drive, Los Angeles, California 90008

     f.    4050 Stevely Avenue, Los Angeles, California 90008

     g.    4906 August Street, Los Angeles, California 90008

     h.    4029 Gelber Place, Los Angeles, California 90008

7.     The subject properties are dwellings within the meaning of 42 U.S.C. § 3602(b).

8.     In addition to these subject properties, Defendants own, operate, and manage at least 29 other large multi-family residential rental properties in the Baldwin Hills community in Los Angeles, California.

9.     Upon information and belief, Defendant MBVR, LLC ("MBR") is a Limited Liability Company, organized under the laws of the State of California by filing the necessary documents on or about September 14, 2010, with registration number 201026010124.   MBVR's principle business address is 42 Peninsula Center Drive, Suite 404, Rolling Hills Estates, California, 90274.

10.     Upon information and belief, over the past few years Defendant de la Torre maintained title in his name to the subject properties, and other multi-family residential rental properties.  Periodically, Defendant de la Torre transferred title of some properties to his wife, Defendant Reinoso, Defendant MBVR, or other fictitious unregistered companies.

11.     Plaintiff is informed and believes that each Defendant was the agent, employee, partner, co-conspirator, or other authorized representative of the other, and, in committing the acts and omissions alleged hereinafter, were acting within the scope of their agency, employment, partnership, conspiracy, or other authorized representation.   Whenever and wherever reference is made in this Complaint to any acts of any one Defendant, such allegations and references shall also be deemed to mean the acts of each Defendant acting individually, jointly, or severally.

12.     Plaintiff is informed and believes that beginning on or before September 14, 2010, each Defendant entered into a conspiracy and agreement with the other Defendants or subsequently joined said conspiracy and ratified the prior acts and conduct of the Defendants who had previously entered into said conspiracy.   Plaintiff is currently unaware of when each Defendant joined said conspiracy but, on information and belief, allege that all Defendants have knowingly, maliciously, and willfully entered into said conspiracy which continues to this day.   The purposes of said ongoing conspiracy include, but are not limited to, the creation, maintenance, and implementation of discriminatory housing practices at the subject properties, all in knowing violation of state and federal law, and the knowing concealment of those discriminatory practices in an effort to perpetuate those policies and practices.   All of Defendants' acts and omissions alleged herein where perpetrated in furtherance of said ongoing conspiracy.

13.     Upon information and belief, Defendants employed on-site managers and leasing agents to operate the subject property on their behalf.   At all times relevant herein, the on-site managers, leasing agents, or employees acted as Defendants' agents within the scope of their agency, employment, or other authorized representation.   Whenever and wherever reference is made in this

Complaint to any acts of a manager, leasing agent, or employee such allegations and reference shall also be deemed to mean the acts of the Defendants.

## IV. FACTUAL ALLEGATIONS

### A. HRC's Standing

14.    HRC is a private non-profit organization that actively supports and promotes fair housing through education and advocacy.  Its mission is to ensure that all persons have the opportunity to secure the housing they desire and can afford, without discrimination based on their race, color, religion, gender, sexual orientation, national origin, familial status, marital status, disability, ancestry, age, source of income, or other characteristic protected by law.  HRC works to identify barriers to fair housing in the City and County of Los Angeles, and to counteract and eliminate discriminatory housing practices.   Among other things, HRC's activities include: (1) outreaching to and educating the community regarding fair housing; (2) investigating allegations of discrimination; (3) conducting tests of housing facilities to determine whether freedom of residence and equal opportunity are provided; and (4) taking other necessary steps to assure equal housing opportunity and counteract and eliminate discriminatory housing practices.

15.    HRC is the agency responsible for the administration of the City of Los Angeles' fair housing program.   As a recipient of federal Community Development Block Grant ("CDBG") funds, the City of Los Angeles is mandated to implement a fair housing program to further the objectives of, among other statutes, the FHA.  As part of its effort to fulfill this federal mandate, the City of Los Angeles subcontracts to HRC to provide comprehensive fair housing services to the Los Angeles community.  These services include: investigations of housing discrimination complaints, enforcement of fair housing laws, public education, outreach, and training on fair housing, and other services as needed to eradicate housing discrimination and ensure equal housing opportunities for City residents.

16.    In accordance with its mission and its contract with the City of Los Angeles, HRC investigates allegations of housing discrimination under both federal and state fair housing laws.  Discriminatory housing practices are brought to the HRC's attention in a number of ways.  For example, prospective or in-place tenants may contact HRC to report housing discrimination at a rental property, or HRC may itself discover printed or on-line advertisements for vacant units that indicate an unlawful preference for certain groups of individuals.

17.    When potential housing discrimination is found, HRC diverts its outreach and education resources and investigates the acts in several ways, including but not limited to testing, conducting tenant surveys, gathering witness statements and audits.  If an investigation uncovers evidence of discrimination in a community, HRC conducts outreach and education in that community to counteract the effects of discrimination.  Outreach to and education of community members may include providing printed materials about fair housing and anti-discrimination laws, holding meetings or seminars for tenants and property owners about their fair housing rights and responsibilities, and advertising HRC's activities in local newspapers.

18.    In the instant case, HRC incurred an "injury in fact" because it has diverted scarce resources from its contractual obligations to respond to and redress Defendants' discrimination and its impact on the community.  Furthermore, in the instant case, HRC's mission was frustrated when it was forced to undertake outreach and education to counteract the impact of housing discrimination on the local housing market.  As described in Section V below, because HRC suffered an "injury in fact" when it uncovered housing discrimination, it is an "aggrieved party" and has standing to sue under the FHA.

///

///

## B.  HRC's Investigation of Race Discrimination Allegations

19.    HRC received a complaint that Defendants refused to rent recently purchased residential dwellings to African Americans.   According to the complaint, Defendants would only rent available residential units to Hispanics.  As part of its mission and contractual obligations to the County of Los Angeles, HRC investigated the complaint.

20.    HRC's review of property records determined that Defendant de la Torre owned approximately 50 multi-family residential buildings in the Baldwin Village area over the past seven to ten years.  The buildings ranged in size from 20 to 30 apartment units.  During the time of the investigation, Defendant de la Torre controlled more than 1,200 apartment units in the Baldwin Village area. Defendants' properties also had distinctive purple banners with yellow letters advertising "renting" in Spanish and a telephone number to the property management company.

21.    By and large, Defendant de la Torre maintained title to the properties he purchased in his own name.  However, Defendant de la Torre established and transferred several properties to the MBVR, LLC or his wife, Monica Reinoso.

### i. On-Site Tests

22.    As part of its investigation, HRC conducted twelve on-site tests of the subject properties.  Testing is an investigative tool in which a pair of individuals ("testers") calls or visits a property to inquire about an advertised rental unit to determine whether they are treated differentially by a housing provider based on the preference or absence of a particular characteristic.  The testers' characteristics are evenly matched except for one key element.  That element typically involves a legally-protected category such as race, familial status, or disability.   Here the paired testers were evenly matched except that one tester was African American,

while the other tester was Hispanic to determine if Defendants engaged race-based discrimination against African American applicants.

23.     HRC also conducted vacancy checks.   Prior to each on-site test, HRC called Defendants' advertised phone numbers and, in Spanish, asked if any units were available at the subject property that was about to be tested.   Upon confirming that a one-bedroom unit was available, testers were sent to the subject properties to determine if Defendants engaged in a pattern or practice of discrimination.   The tests ultimately uncovered that Defendants unlawfully discriminated against prospective tenants on the basis of race

24.     On July 16, 2011, HRC conducted the first test at 3916 Gibraltar Avenue, Los Angeles, California.   In this test, the first tester was African American and the second tester was Hispanic.

25.     The African American tester arrived at 3916 Gibraltar Avenue at 11:15 a.m., called the number on the purple banner in front of the building, and a woman answered in Spanish.   The tester asked the woman if she was the manager and she replied, "yes, I don't have any apartments" and the hung up.   The African American tester left.

26.     The Hispanic tester arrived at the property at 11:36 a.m., called the number on the purple banner in front of the building, and asked, in English, to see available one-bedroom units.   The tester heard someone in the background speak to the female, but could not determine what was said.   The female on the phone then asked the Hispanic tester if she was Hispanic, to which the tester said "yes."   The female then told the Hispanic tester to see unit 9 and permitted the tester to enter. When the Hispanic tester entered the building a woman, who identified herself as Araceli, agreed to show the Hispanic tester a two-bedroom unit.   The Hispanic tester's conversation with Araceli was conducted in Spanish.    After Araceli

showed the Hispanic tester the apartment, Araceli asked the tester to leave a name and number to later provide the tester an application.

27.     On July 28, 2011, HRC conducted a second test at 3916 Gibraltar Avenue, Los Angeles, California.  The first tester was Hispanic and the second tester was African American.

28.     The Hispanic tester arrived at the property at 12:36 p.m., called the phone number on the banner, and in Spanish asked a woman, who identified herself as Araceli, for a one-bedroom unit.  Araceli told the Hispanic tester that a two-bedroom unit was available, showed the tester the apartment, and asked the tester to return the following day for an application.

29.     The African American tester arrived at the property at 1:23 p.m., called the phone number on the banner, and in English asked a woman, who identified herself as the manager, for an available one-bedroom unit.  The banner advertised a move in special of one-half month's rent as security deposit.  When the tester asked to see any one-bedroom units, the manager said none were available.  The tester then said that he was unable to hear her well and that he would call back shortly.  When the African American tester called again, the woman said that no apartments were available.  The tester insisted to see any available units, the manager said there was a two-bedroom unit available and the rent was $950 per month.  The manager, along with a teenage female, met the tester and permitted the African American tester to view a two-bedroom unit.  The teenager, translating for the manager, told the tester that the unit would be available mid to late August and that her father would be home later to better explain the move-in special advertised on the banner.

30.     On September 21, 2011, HRC conducted a third test at 3916 Gibraltar Avenue Los Angeles, California.  The first tester was Hispanic and the second tester was African American.

31.     The Hispanic tester arrived at 10:00 a.m., called the phone number on the banner, and in Spanish asked a woman, who identified herself as Araceli and as the manager, to view the apartment for rent.   Araceli showed the Hispanic tester unit 14 and told the tester that the rent was $950 per month, the security deposit was $475, the lease term was 6 months, and to return later for an application.

32.     The African American tester arrived at 10:55 a.m., called the phone number on the banner, and in English asked a woman, who identified herself as the leasing agent, to view the apartment for rent.   The leasing agent showed the African American tester unit 14, told the tester that the rent was $1,100 per month, the security deposit was $550, and the lease term was one year.

33.     On July 16, 2011, HRC conducted a fourth test at 3885 Potomac Avenue, Los Angeles, California.   The first tester was Hispanic and the second tester was African America.

34.     The Hispanic tester arrived at 11:51 a.m., called the advertised phone number, and asked a male, who identified himself as Santos, for any vacant one-bedroom units.   Santos told the Hispanic tester in Spanish that there were no apartments available at that moment, but that one would be available in a week or two.   Santos also told the tester that the rent was $850 per month, the security deposit was $400, and told the tester to return in one week to see if the unit was available for viewing.

35.     The African American tester arrived at 12:00 p.m., went to the manager's unit, and asked a woman, who identified herself as Natalie and the manager, for any available apartments.   Natalie offered to show the African American tester a one-bedroom unit.   After a few minutes of searching for the key to the available unit, Natalie told the tester that she did not have the keys to the apartment and to return later.

36.  On July 28, 2011, HRC conducted a fifth test at 3885 Potomac Avenue, Los Angeles, California.  The first tester was Hispanic and the second tester was African American.

37.  The Hispanic tester arrived at the property at 2:42 p.m., went to the manager's unit, and in Spanish spoke with a woman, who identified herself as Natalie and the manager.  Natalie appeared to be 25 years old and Hispanic. Natalie told the Hispanic tester that three one-bedroom apartments were available, but she showed only one apartment which was ready for viewing.  Natalie told the tester to return the following day for an application.

38.  The African American tester arrived at the property at 3:34 p.m., went to the manager's unit, and a woman, who appeared to be Hispanic in her mid-twenties, answered the door.  When the African American tester asked about the apartment for rent, the woman told the tester that Santos was the property manager and that he would not be back until after 5:30 p.m.  The African American tester left.

39.  On July 16, 2011, HRC conducted a sixth test at 4050 Stevely Avenue, Los Angeles, California.  The first tester was African American and the second tester was Hispanic.

40.  The African American tester arrived at the property at 10:20 a.m., went to the manager's unit, and spoke with a Hispanic woman, who identified herself as the manager.  When the African American tester asked the manager if she had any available units, the woman said that no units were available.

41.  The Hispanic tester arrived at the property at 10:42 a.m., went to the manager's unit, and spoke with a woman, who identified herself as Angela.  The Hispanic tester asked Angela if she had any one-bedroom units available.  Angela told the tester that one unit was available, but that someone was coming later that day to view it.  Angela showed the Hispanic tester the available unit.

42.     On July 16, 2011, HRC conducted a seventh test at 4029 Gelber Avenue, Los Angeles, California.  The first tester was African American and the second tester was Hispanic.

43.     The African American tester arrived at the property at 10:45 a.m., saw a sign with the manager's phone posted inside the building, and called that number. A young boy answered and said that the manager was not available.  The tester then went to unit 3, knocked on the door, but no one answered.  The tester left the property.

44.     The Hispanic tester arrived at the property at 11:07 a.m., went to unit 3, and knocked on the door but no one answered.  The tester then called the advertised phone number at the front of the building, and in Spanish asked a woman, who identified herself as Sara, for any one-bedroom apartments.  Sara met the Hispanic tester and permitted the tester to view a two-bedroom apartment. Sara told the Hispanic tester that the rent was $800, the security deposit was $400, and the unit would become available in two weeks.

45.     On July 28, 2011, HRC conducted an eighth test at 4029 Gelber Avenue, Los Angeles, California.  The first tester was Hispanic and the second tester was African American.

46.     The Hispanic tester arrived at 11:03 a.m., went to the manager's unit, and spoke in Spanish with a woman, who identified herself as Sara and the manager.  When the tester told Sara that he was looking for a one-bedroom apartment, Sara said that a two-bedroom at Defendant's property across the street would become available in two weeks.

47.     The African American tester arrived at 11:33 a.m., went to the manager's unit, and asked a woman for any available one-bedroom units.  The woman told the African American tester "no rent."  The tester asked again for any

available units. A little girl came to the door and translated for the woman that no units were available for rent.

48.    On July 29, 2011, HRC conduct a ninth test at 4535 Santo Thomas Avenue.   The first tester was Hispanic and the second tester was African American.

49.    The Hispanic tester arrived at the property at 10:47 a.m., a woman who identified herself as Mayela and the manager, approached and asked the tester for the reason for the visit.  The tester asked in Spanish to see any available units. Mayela told the tester that she recently rented the available units, but that a unit was available at a property down the street, a property that Defendants also owned. Mayela called another agent and directed the Hispanic tester to the property down the street.

50.    The African American tester arrived at the property at 11:15 a.m. and a woman, who identified herself as Mayela, asked him his reason for the visit.  The African American tester asked to speak with the property manager.   Mayela pointed to the balcony and said Fabiola was the manager.  The African American tester visited Fabiola and asked to see any vacant one-bedroom units.  Fabiola told the tester that unit 14, a two-bedroom, was available, the monthly rent was $1,050, and to look at the unit.  At this moment, Mayela intercepted and told the African American tester that according to the rental office unit 14 was already rented. Fabiola then told the tester to check other buildings nearby.   As the African American tester left the property, Mayela told him to check 4515 Santo Thomas Drive, a building that Defendants did not manage or own.

51.    On June 30, 2012, HRC conducted a tenth test at 4906 August Street, Los Angeles, California. The first tester was African American and the second tester was Hispanic.

52.     The African American tester arrived at the property at 3:30 p.m., went to the manager's unit, and met with a man, who identified himself as Jorge.  When the African American tester told Jorge that she was looking for a one-bedroom apartment, Jorge said that one would become available the following month.  Jorge also told the tester that his wife, Gabby, was the manager and that she was not home.  Jorge instructed the tester to return next "Tuesday or Wednesday" so that Gabby can show the unit.

53.     The Hispanic tester arrived at the property at 4:05 p.m., went to the manager's unit, and met a man, who identified himself as Jorge.  Jorge told the Hispanic tester to speak with his wife Gabby, who then came to the door.  Gabby told the Hispanic tester that the tenant in unit 26, a one-bedroom apartment, gave notice and will be leaving by the end of the week.  Gabby told the tester to return on the following Tuesday to verify if the unit is available.

54.     On July 29, 2012, the African American tester who performed the June 30, 2012, test returned to 4906 August Avenue, Los Angeles, California to view an apartment with Gabby. Gabby showed the African American tester apartment 19, and told the tester that the tenant in unit 26 had not vacated and she did not have the key to the apartment.

55.     On August 1, 2012, the Hispanic tester who performed the June 30, 2012, test returned to 4906 August Avenue, Los Angeles, California to view an apartment with Gabby.  Gabby showed the available unit, apartment 26, and told the Hispanic tester that the apartment would be cleaned and painted.

56.     On September 7, 2012, HRC conducted an eleventh test at 3825 Gibraltar Avenue, Los Angeles, California.  The first tester was African American and the second tester was Hispanic.

57.     The African American tester arrived at 2:07 p.m., went to the manager's unit, and a Hispanic man answered the door.  The tester asked to speak

with the manager and the man said the manger would not be there for another two hours.   The African American tester asked the man if he could show her the available one-bedroom apartment.   The man said no because only the manager could show it.   Minutes later the African American tester called the phone number in an ad at the front of the building.   The tester asked if she could see a one-bedroom apartment and the manager, who identified herself as Maria, told the tester "no apartment."   The African American tester told Maria that a lady in front of the building said that there was a one-bedroom available.   Maria responded, "What lady? Not true.   No apartment available."   After the test was concluded, HRC discovered that the telephone number that the African American tester called was a landline in the manager's unit at the property.

58.   The Hispanic tester arrived at the property at 4:25 p.m., saw two men working on an empty apartment, and asked where he could find the manager.   One of the two men, who identified himself as Hector, told the tester that he was not the manager but that he could rent apartments.   Hector then told the Hispanic tester that the apartment in which he was working would be available the following day and provided the tester an application.   Hector also mentioned that a two-bedroom unit was available at 4009 Stevely Avenue, one of Defendants' properties.

59.   On September 14, 2012, HRC conducted a twelfth test at 3838 Gibraltar, Los Angeles, California.   The first tester was African American and the second tester was Hispanic.

60.   The African American tester arrived at 9:00 a.m., went to unit 6 which was previously identified as the manager's unit, knocked on the door, but received no answer.   The African American tester then knocked on unit 11, an apartment that appeared to be empty, but did not locate the manager.   The tester returned to unit 6, knocked on the door, and met with a woman who identified herself as the manager.   The tester asked to see the available three-bedroom unit, but the woman

said no.   The woman told the African American tester that the unit was not available and that no units were available at the time.

61.   The Hispanic tester arrived at 9:30 a.m., went to unit 6, and met a woman, who identified herself as Maria.   The Hispanic tester asked to see a three-bedroom unit.   Maria told the Hispanic tester that her husband was the manager and that she was not sure if a three-bedroom unit was available, but that she would call her husband at work.   After a phone call, Maria told the Hispanic tester that someone had filled out an application for the empty apartment, but she did not know if the applicant had been approved.   Maria then showed the empty unit to the Hispanic tester.

62.   All tests found that Defendants' intentionally and willfully discriminated against African American apartment-seekers on the basis of race.

**ii. Former Property Manager's Statement**

63.   On April 16, 2013, HRC interviewed one of Defendants' former employees.   The employee worked for Defendants for approximately five years in the capacities of leasing agent, rent collector, maintenance supervisor, and rent processor.   The former employee stated that Defendants specifically told and directed her to rent exclusively to Hispanics, and to turn away African American applicants.   The former employee claimed that she could know whether a caller was African American from his or her voice.   According to the former employee, Defendants only advertised in Spanish newspapers or in banners in front of the subject properties.   Although the former employee occasionally rented to African American tenants, Defendants required them to submit documents that Hispanics were not required to submit.   The former employee also stated that as long as an applicant was Hispanic and was able to pay rent, Defendants imposed little to no criteria in accepting their rental application.

///

## V. INJURY

1.     As a result of Defendants' housing discrimination, Plaintiff HRC was required to divert its scarce resources from its other fair housing obligations. Furthermore, Defendants' housing discrimination frustrated HRC's mission to eliminate housing discrimination and actively promote fair housing in Los Angeles County.   Defendants' discrimination required HRC to conduct surveys, mail information to the surrounding community, and conduct an informational workshop to counteract the effect of the Defendants' discriminatory rental practices.

2.     Defendants' discriminatory housing practices also deprived Plaintiff HRC, its agents and employees of the statutory right to truthful information about the availability of housing because of race.   Accordingly, HRC is an "aggrieved party" within the meaning of 42 U.S.C. §3602(i) and Cal. Gov't Code §12927(g), and seeks monetary, declaratory, and injunctive relief for housing discrimination by and through this action.

3.     Defendants' unlawful rental practices, as described above, were wanton, willful, malicious, fraudulent, and/or oppressive; were intended to cause injury; and/or were done in conscious, callous, reckless, or deliberate disregard for the Plaintiff's federally protected rights. Thus, Plaintiff is entitled to punitive damages.

4.     An actual case or controversy exists between the parties regarding Defendants' duties under federal and state fair housing laws.   Accordingly, Plaintiff is entitled to declaratory relief.

5.     Unless enjoined, Defendants will continue to engage in unlawful discrimination, and the pattern or practice of discrimination described above. Plaintiff has no adequate remedy at law.   Accordingly, Plaintiff is entitled to injunctive relief.

## VI.   CLAIMS FOR RELIEF

### First Claim - Fair Housing Act

6.      Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs.

7.      Defendants, by and through a pattern or practice of purposeful discrimination on the basis of race, has violated the federal Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.* ("FHA"), in that Defendants injured Plaintiff by engaging in the following discriminatory housing practices:

a)      Refusing to negotiate for the rental of a dwelling because of race 42 U.S.C. § 3604(a);

b)      Making unavailable or denying a dwelling because of a race 42 U.S.C. § 3604(a);

c)      Discriminating in the terms, treatment, condition, or privileges of rental of a dwelling because of race 42 U.S.C. § 3604(b);

d)      Making, printing and publishing advertisement and statements that indicate a preference based on race 42 U.S.C. § 3604(c).

e)      Representing that a dwelling is not available for inspection or rental, when such a dwelling is in fact so available for inspection or rental, because of race in violation of 42 U.S.C. § 3604(d); and

f)      Failed to display a Department of Housing and Urban Development (HUD) Fair Housing and Equal Opportunity poster, in violation of 24 Code of Federal Regulations § 110 *et. seq.*

8.      As a direct and proximate result of the acts and omissions herein alleged, Plaintiff has suffered, and continues to suffer injury.

///
///
///

9.     Pursuant to 42 U.S.C. § 3613(c)(1) and (2), Defendant is liable to Plaintiff for compensatory damages, punitive damages, injunctive relief, and attorneys' fees and costs.

## Second Claim – California Fair Employment and Housing Act

10.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs.

11.     Defendants, by and through a pattern or practice of discrimination on the basis of race, violated the California Fair Employment and Housing Act, Cal. Gov't Code § 12955 *et seq.,* ("FEHA"), by engaging in the following discriminatory housing practices:

    a)     Discriminating against a person because of their race in violation of Cal. Gov't Code § 12955(a);

    b)     Making, printing or publishing, or causing to be made, printed, or published any notice, statement or advertisement with respect to the rental of a housing accommodation that indicates a preference, limitation, or discrimination based on race in violation of Cal. Gov't Code § 12955 (c);

    c)     Implementing and enforcing policies that had a discriminatory effect on persons because of race in violation of Cal. Gov't Code § 12955.8;

    d)     Aiding, abetting, inciting, compelling, or coercing the doing of any of the unlawful acts or practices, or attempted to do so, in violation of Cal. Gov't Code § 12955(g); and

    e)     Otherwise making unavailable or denying a dwelling to a person because of race in violation of Cal. Gov't Code § 12955(k); and

12.     As a direct and proximate result of the aforementioned acts, Plaintiff has suffered, and continues to suffer injury.

13.     Pursuant to Cal. Gov't Code § 12989.2, Plaintiff is entitled to injunctive relief, compensatory damages, punitive damages, attorneys' fees and costs.

### Third Claim – Unfair Business Practices Act

14.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs.

15.     In acting as herein alleged, Defendants have failed to comply with the FHA and FEHA.   Accordingly, Defendants have engaged in acts of unfair competition as proscribed by Cal. Bus. & Prof. Code § 17200 *et seq.* By bringing this action, Plaintiff is acting in the interest of itself and the general public, pursuant to Cal. Bus. & Prof. Code § 17204.

16.     Plaintiff and the general public have suffered, and continue to suffer, irreparable harm due to Defendants' discriminatory housing practices and its continuing and conscious disregard of fair housing laws.

17.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks to enjoin Defendants from their continuing commission of the acts alleged above, which if not enjoined will continue to irreparably harm Plaintiff and the citizens of the State of California, harm for which there is no plain, speedy, or adequate remedy at law.

### Fourth Claim - Negligence

18.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs.

19.     Defendants owed and continue to owe Plaintiff a non-delegable duty to operate the subject property in a manner that is free from unlawful discrimination and to employ, train, and supervise their directors, employees, agents, and themselves to fulfill that duty. Defendants breached that duty by

engaging in a pattern and practice of discrimination on the basis of race status as herein alleged.

20.     Defendants' negligence includes but is not limited to:

a)     Defendants' negligent failure to supervise themselves regarding compliance with the requirements of federal and state fair housing laws; and

b)     Defendants' negligent failure to supervise agents and employees regarding compliance with the requirements of federal and state fair housing laws; and

c)     Defendants' negligent failure to operate the subject property in conformity with accepted industry custom and standards.

21.     As a result of Defendants' negligence, Plaintiff has suffered, and continues to suffer injury.

## VII.   PRAYER FOR RELIEF

Plaintiff prays this Court enter judgment as follows:

1.     Declare that Defendants' discriminatory practices as set forth above, violate the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.*, the California Fair Employment and Housing Act, Cal. Gov't Code § 12955 *et seq.*, and the California Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200 *et seq.*

2.     Enjoin Defendants from discriminating on the basis of race.

3.     For injunctive relief enjoining Defendants from discriminating against prospective renters and in-place tenants on the basis of race.

4.     Order Defendants to engage in comprehensive fair housing training.

5.     Order Defendants to submit to monitoring of their practices and records in order to ensure compliance with the fair housing laws.

6.     Award compensatory damages to Plaintiff.

7.     Award punitive damages to Plaintiff.

8.    Award any other such damages as may be allowed by federal and state law.

9.    Award Plaintiff its reasonable attorneys' fees and costs.

10.    Additional and further relief which the Court deems just and proper.

Dated:  July 9, 2013                Respectfully Submitted,

                                          JOEL MARRERO
                                          Attorney for Plaintiff(s)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dolly Gee and the assigned discovery Magistrate Judge is Carla Woehrle.

The case number on all documents filed with the Court should read as follows:

## CV13- 4921 DMG (CWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

======================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [✓] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

DAVID ELDER (SBN 171510)
delder@housingrightscenter.org
JUDITH B. VASAN (SBN 278115)
JOEL MARRERO (SBN 275601)
3255 Wilshire Boulevard, Suite 1150
Los Angeles, CA 90010
Phone: (213) 387-8400 x1116 Fax (213) 381-8555

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTHERN CALIFORNIA HOUSING RIGHTS CENTER, INC., d/b/a HOUSING RIGHTS CENTER, INC., a California nonprofit corporation,<br><br>PLAINTIFF(S)<br><br>v.<br><br>PATRICK DE LA TORRE, individually, MONICA REINOSO, individually, and MBVR, LLC, a California limited liability company,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV13- 4921 DMG (CWx)<br><br><br>**SUMMONS** |

TO:     DEFENDANT(S): _____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _David Elder_____, whose address is _3255 Wilshire Boulevard, Suite 1150, Los Angeles, CA 90010_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

JUL - 9 2013

Dated: _____

By: _____

JULIE PRADO

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

Attorneys for Plaintiff(s) (Continued)

BRANCART & BRANCART
Christopher Brancart (SBN 128475)
cbrancart@brancart.com
Elizabeth Brancart (SBN 122092)
ebrancart@brancart.com
Post Office Box 686
Pescadero, CA 94060
Tel.: (650) 879-0141
Fax: (650) 879-1103

SUMMONS

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| SOUTHERN CALIFORNIA HOUSING RIGHTS CENTER, INC., d/b/a HOUSING RIGHTS CENTER, INC., a California nonprofit corporation, | PATRICK DE LA TORRE, individually, MONICA REINOSO, individually, and MBVR, LLC, a California limited liability company, |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>HOUSING RIGHTS CENTER, INC.<br>3255 Wilshire Boulevard, Suite 1150, Los Angeles, CA 90010<br>TEL: 213-387-8400 x1116 / FAX: (213) 381-8555 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III.)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No     ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
This action arises under the Federal Fair Housing Act, 42 U.S.C. §§ 3601-3619

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☑ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

CV13- 4921

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | N/A |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | N/A |
| Los Angeles County | N/A |
| Los Angeles County | N/A |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | N/A |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _[signature]_                     Date   7/9/2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

I (b)    Attorneys for Plaintiff (Continued)

BRANCART & BRANCART
Christopher Brancart (SBN 128475)
cbrancart@brancart.com
Elizabeth Brancart (SBN 122092)
ebrancart@brancart.com
Post Office Box 686
Pescadero, CA 94060
Tel.: (650) 879-0141
Fax: (650) 879-1103

CIVIL COVER SHEET